UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHARLES BROWER,

         Plaintiff,

  -against-

ACORN ADVISORS GROUP HOLDINGS,
LLC; ALS CONSULTING, INC.; THE ALS
GROUP, LLC; INSPERITY, INC.; ZARTI
GROUP, LLC; and ALBERT L. SICA,

         Defendants.
-----------------------------------------------------------X

**OPINION & ORDER**

17-CV-8830 (CS)

<u>Appearances</u>:
Marcel Florestal
Florestal Law Firm, PLLC
New York, New York
*Counsel for Plaintiff*

Mercedes Colwin
Christopher A. Seacord
Francis J. Giambalvo
Gordon Rees Scully Mansukhani, LLP
New York, New York
*Counsel for the ALS Defendants*

Holly G. Rogers
Melick & Porter LLP
New York, New York
*Counsel for Defendant Insperity, Inc.*

<u>Seibel, J.</u>

  Before the Court is the motion to dismiss of Defendants Acorn Advisors Group Holdings, LLC; ALS Consulting, Inc.; The ALS Group, LLC; Zarti Group, LLC; and Albert L. Sica (collectively, the "ALS Defendants"), (Doc. 30), and the motion to dismiss of Defendant Insperity, Inc., (Doc. 36).

1

## I. BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint. (Doc. 23 ("AC").)

### A. Facts

Acorn Advisors Group Holdings is a parent entity that controls its subsidiaries ALS Consulting, Inc; The ALS Group, LLC; and Zarti Group, LLC, and has its principal place of business in Edison, New Jersey. (*Id.* ¶¶ 5-8.) Insperity is a foreign business entity and a professional employer organization that does business in New York and is headquartered in Kingwood, Texas. (*Id.* ¶¶ 9-10.) Sica serves as the President of all the Defendant entities except Insperity and exercises substantial control over all decision making for those entities. (*Id.* ¶ 11.) Plaintiff Charles Brower, a resident of Yonkers, New York, was hired by Defendants in November 2016 to be Chief Operating Officer. (*Id.* ¶¶ 4, 14.) At or around that time, Sica informed Plaintiff that within a few years Plaintiff would transition into Sica's role as President. (*See id.* ¶ 14)

Plaintiff alleges that "Sica created a culture of unchecked aggression, unprofessionalism, illegal and unethical behavior in the workplace, inclusive of daily threats of being fired if one did not adhere to what he expected regardless of whether . . . it was illegal[] or unethical." (*Id.* ¶ 15). For example, Sica "aggressively yell[ed] at Plaintiff" concerning a report that did not meet Sica's expectations, (*id.* ¶ 18), and cursed at him on several occasions for things such as failing to reply to Sica's e-mail and providing weekly, as opposed to monthly, billing numbers, (*id.* ¶¶ 17-19, 25). Sica also incorrectly suspected that Plaintiff was having an inappropriate relationship with a female co-worker and expressed concern that Defendants could be sued if she accused Plaintiff

of improper touching. (*Id.* at ¶¶ 20-22.) Plaintiff was "in fear of losing [his] job[] at any moment" and could not function at work or at home due to stress and anxiety. (*Id.* ¶ 27.)

Plaintiff further alleges that on "innumerable occasions" Sica forced Plaintiff to engage in "unethical and illegal billing" of clients. (*Id.* ¶ 29.) Plaintiff asserts that Sica forced him to "assign unlicensed staff to review client policy agreements" and that Sica "would bill the client as if the policies were reviewed by a licensed broker." (*Id.* ¶ 30.) Plaintiff opposed this practice, thought it was illegal, and believed that he was "compromising his integrity and ethics." (*Id.*) On an unspecified date or dates, Plaintiff articulated these beliefs to Sica and stated that a particular client should not be billed for brokerage review work completed by an unlicensed staff member who was not qualified to review the client's policy. (*See id.*) Sica "responded, as he did on numerous occasions, by yelling at Plaintiff and telling him to just focus on 'time and material' work," which Plaintiff understood to mean, "Just do as you're told, or else." (*Id.*)

Plaintiff alleges that he was terminated on an unspecified date when he "decided to take a tougher stance and decided he would not manufacture billing by assigning unlicensed staff." (*Id.* ¶ 33.)[1]

  B.  **Procedural History**

On November 13, 2017, Plaintiff commenced this suit by filing a complaint against Defendants alleging (1) intentional infliction of emotional distress, (2) tortious interference with prospective economic advantage, (3) retaliation pursuant to the New Jersey Conscientious Employee Protection Act ("CEPA"), and (4) breach of the covenant of good faith and fair dealing. (Doc. 1.)[2] That same day, Plaintiff amended his complaint to include a jury demand.

---

[1] In his opposition brief, Plaintiff states that he was terminated on September 1, 2017. (Doc. 33 at 1.)

[2] Plaintiff asserts that venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(3) because Insperity is a foreign entity that does business in New York and therefore is subject to personal jurisdiction

3

(Doc. 2.) On December 8, 2017, the ALS Defendants submitted a letter requesting a pre-motion conference in anticipation of their motion to dismiss on the basis that Plaintiff's claims were insufficiently pleaded under Federal Rule of Civil Procedure 12(b)(6). (Doc. 6.) Insperity filed a similar letter on January 8, 2018. (Doc. 17.) Plaintiff responded on January 9, 2018, (Doc. 18), and on January 16, 2018, the Court held a pre-motion conference during which Plaintiff was granted leave to amend his complaint by March, 27, 2018, (Minute Entry dated January 16, 2018).

On February 6, 2018, the ALS Defendants filed a motion to seal the names of its clients that were identified by name in Plaintiff's original complaints, (Doc. 19), which the Court granted on March 14, 2018, directing Plaintiff to file an amended complaint removing the clients' names, (Doc. 21). On March, 23, 2018, Plaintiff filed an Amended Complaint ("AC"),[3] which is identical in all respects to Plaintiff's previous complaint but for the removal of clients' names. (Doc. 23.) In other words, the AC asserts the same four claims and contains no additional factual allegations to support those claims.

On June 19, 2018, the parties filed their motion papers, including the ALS Defendants' motion to dismiss, (Doc. 30), and memorandum of law in support of that motion, (Doc. 31 ("ALS Ds' Mem.")); Insperity's motion to dismiss, (Doc. 36), and memorandum of law in

---

in New York courts. (AC ¶ 3.) But § 1391(b)(3) only applies "if there is no district in which [the] action may otherwise be brought." It is not clear what other provision of § 1391(b) renders venue in this District proper, as it appears that at least one Defendant is not a resident of New York and that the events arose in New Jersey. Defendants have not filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(3), and the failure to raise the defense of improper venue is waived if not raised in a pre-answer motion or in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1). And while the Court may not dismiss *sua sponte* for improper venue, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999), it may require the parties to show cause why the case should not be transferred to a proper venue, *see Assa Realty LLC v. Sol. Grp. Corp.*, No. 17-CV-177, 2017 WL 2241524, at *1 (S.D.N.Y. May 22, 2017). Thus, should the case go forward, the parties are directed to show cause, within 14 days of the filing of any Third Amended Complaint, why this case should not be transferred to the District of New Jersey.

[3] Plaintiff's March 23, 2018 complaint is technically his second amended complaint, but because the parties refer to it as the "Amended Complaint," the Court will do the same.

support of that motion, (Doc. 37 ("Insperity's Mem.")); Plaintiff's memorandum of law in opposition, (Doc. 33 ("P's Opp.")), in which Plaintiff withdrew all claims except for his retaliation claim under CEPA, (*id.* at 3); the ALS Defendants' reply, (Doc. 34 ("ALS Ds' Reply")); and Insperity's reply, (Doc. 38).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

CEPA is a whistleblower statute that "creates a cause of action for an employee who is subjected to retaliation for reporting workplace misconduct." *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 555 (2013). The New Jersey Supreme Court has instructed that "CEPA is a remedial statute that 'promotes a strong public policy of the State' and 'therefore should be construed liberally to effectuate its important social goal.'" *Id.* (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994)). It is not intended to protect "[v]ague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness." *Id.* at 559.

CEPA prohibits, among other things, an employer from retaliating against an employee who

> [o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; (2) is fraudulent or criminal . . . ; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3(c) (West 2006).

To state a CEPA claim under this subsection, a plaintiff must plausibly allege that "(1) he reasonably believed that his employer's conduct violated a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy, (2) he objected to, or refused to participate in[,] the conduct, (3) an adverse employment action was taken against him, and (4) a causal connection exists between the activity and the adverse employment action." *Stapleton v. DSW,*

6

*Inc.*, 931 F. Supp. 2d 635, 639 (D.N.J. 2013); *see Marra v. Township of Harrison*, 913 F. Supp. 2d 100, 105 (D.N.J. 2012); *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003). Here, the ALS Defendants argue that Plaintiff has not sufficiently pleaded the first and fourth elements of the claim, (ALS Ds' Mem. at 7-11), while Insperity agrees and also contends that the third element is insufficiently pleaded as to it, (Insperity Mem. at 10-14).

With respect to the first element, Defendants contend that Plaintiff must identify the law, rule or regulation that he believes was violated. (ALS Ds' Mem. at 7-8; Insperity Mem. at 12.) The cases upon which Defendants rely, however, do not support that proposition. In *Dzwonar*, for example, the New Jersey Supreme Court stated that "the *trial court* must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct," and the court "should enter judgment for a defendant when no such law or policy is forthcoming." 177 N.J. at 463 (emphasis added); *see Griffin v. Metromedia Energy, Inc.*, No. 10-CV-3739, 2011 WL 12872504, at *3 (D.N.J. Feb. 7, 2011) ("To satisfy the first CEPA prong, Plaintiff need not identify a particular law, regulation, or public policy as long as the court can identify the law or policy that might have been violated by the challenged conduct.") (internal quotation marks omitted).[4]

Thus, it is not fatal *per se* that Plaintiff failed to specify in the AC which law, rule or regulation the violation of which he believed was opposing. But he is obligated to provide sufficient facts from which the Court can identify the law he is challenging. *See Griffin*, 2011 WL 12872504, at *3; *Dzwonar*, 177 N.J. at 463. Here, Plaintiff asserts that Sica forced him to

---

[4] Although the Court in *Hitesman v. Bridgeway, Inc.* stated that CEPA "requires a plaintiff employee to identify a source of law or other authority, constituting an expression of public policy, that sets a governing standard for the defendant employer's conduct," that was in reference to a CEPA claim brought under § 34:19-3(c)(3) – the "incompatible with a clear mandate of public policy" subsection. 218 N.J. 8, 33 (N.J. 2014). Here it appears Plaintiff means to invoke the provisions relating to a violation of law or fraudulent conduct.

7

assign unlicensed staff to review client policy agreements but would bill clients as if the policies were reviewed by licensed brokers and that, with respect to at least one client, the assigned employee was not qualified to review the client's policy. (AC ¶ 30.) It is unclear if Plaintiff means to allege that: 1) Defendants were violating a regulation or law requiring a licensed broker to do the sort of work at issue; 2) Defendants breached a provision of their contracts with clients that called for Defendants to assign the work to licensed brokers; 3) Defendants defrauded their clients because the contracts contained one billing rate for licensed brokers and another for unlicensed workers, and Defendants billed at the former rate for work done by the latter; or 4) Defendants did a poor job for their clients by using unqualified employees. Not all of the above would necessarily be reasonably believed to violate a law, rule or regulation or amount to fraud.[5] And in any event, because Plaintiff's theory is unclear, I cannot discern which law he alleges may have been violated.[6]

Accordingly, the CEPA claim must be dismissed. But, as discussed below, I will allow Plaintiff to amend.

---

[5] The ALS Defendants also argue that Plaintiff's allegation concerning billing work that was performed by unlicensed staff and billed as if it were done by licensed brokers does not amount to an actual violation of any law, rule or regulation. (ALS Ds' Mem. at 8-9.) But the alleged conduct could amount to fraud, depending on the agreements between the ALS Defendants and their clients, and on the representations made by the ALS Defendants. In any event, the focus of a CEPA claim is whether the plaintiff "*reasonably believed* that the activity was occurring and that it amounted to fraud" or a violation of law, not whether it actually did as a legal matter. *Battaglia,* 214 N.J. at 557 (emphasis added). So that the complained-of conduct may not have actually constituted a violation of law is not the issue.

[6] Plaintiff argues in his brief that he has sufficiently pleaded the first element, because he alleges "that Defendants' clients paid for, and expected Defendants to assign[,] . . . experienced licensed staff to review their policy agreements and make recommendations" and that "Defendants instructed Plaintiff to bill the client at the higher senior level rate, even though only junior unlicensed individuals did the work" and did not have the necessary background to conduct the review and make recommendations. (P's Opp. at 4.) But almost none of these allegations are included in the AC, and Plaintiff cannot amend a pleading through his opposition brief. *See, e.g.*, *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (collecting cases).

The second element of a CEPA claim requires Plaintiff to plead that he objected to or refused to participate in the complained-of conduct. Plaintiff alleges that he articulated to Sica that he was opposed to the billing practice and that it was illegal. (*Id.*) Because "disclosing the objectionable practice to a supervisor is a whistle-blowing activity," the second element is satisfied. *Griffin*, 2011 WL 12872504, at *3.[7]

As for the third element, termination constitutes an adverse employment action, *id.*, and Defendants wisely do not dispute that Plaintiff has properly pleaded that an adverse employment action was taken against him, (ALS Ds' Reply at 3 n.2; Insperity Mem. at 10-14).[8]

The fourth and final element requires Plaintiff to plausibly plead a causal connection between the whistle-blowing activity and his termination. Plaintiff's only allegation in his AC concerning causation is as follows: "When Plaintiff decided to take a tougher stance and decided he would not manufacture billing by assigning unlicensed staff to do this work, he was summarily terminated from his position." (AC ¶ 33.) Defendants argue that this allegation is conclusory and insufficient to allege the requisite causal nexus. (ALS Ds' Mem. at 9-11; Insperity Mem. at 13-14.) Plaintiff responds that temporal proximity between a whistle-blowing activity and an adverse employment action may support the causal connection. (P's Opp. at 5.) While that is true, *see, e.g.*, *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003), the AC does not indicate when Plaintiff objected to the practice at issue or when he was terminated. Plaintiff's allegation that he was summarily terminated "[w]hen [he] decided to take a tougher stance and decided he would not manufacture billing," (AC ¶ 33), does not save him,

---

[7] In their reply, the ALS Defendants contend that because "Plaintiff concedes he did not object to any activity or policy which he reasonably believed was in violation of the law, Plaintiff also concedes that he did not perform a whistle blowing activity." (ALS Ds' Reply at 5.) But Plaintiff made no such concession in his opposition brief, and the AC plainly states otherwise.

[8] As discussed below, Insperity disputes the sufficiency of the pleading that it had any role in that adverse action.

because it is not clear from that allegation that he actually did take a tougher stance and report to a supervisor or his employers that he would no longer partake in the complained-of practice (as opposed to resolving to do so) or that his employers were otherwise aware of such refusal. To the extent that can be inferred, the timing of his termination vis-à-vis the timing of his alleged objections still remains unclear. And, indeed, because Plaintiff alleges that he opposed Defendants' billing practices on "numerous occasions," (AC ¶ 30), and that Sica criticized his performance throughout his tenure, (*see, e.g.*, *id.* ¶¶ 17-19, 23, 25, 28), it is far from clear on what basis Plaintiff concludes that his summary dismissal resulted from his resolve to take a tougher stance and not something else. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Rheineck v. Hutchinson Tech., Inc.*, 261 F.3d 751, 757-58 (8th Cir. 2001) (criticism of plaintiff's performance before alleged retaliatory act dispels inference of retaliation); *Van Dunk v. Brower*, No. 11-CV-4564, 2013 WL 5970172, at *10 (S.D.N.Y. Nov. 7, 2013) (no causal connection between plaintiff's complaints and defendant's alleged retaliation where defendant had prior opportunities to retaliate against plaintiff for filing complaints over multiple decades but did not do so).

Plaintiff further argues that the following allegations are sufficient to support the requisite causal connection: Plaintiff was one of the first to arrive to work and the last to leave; he worked and fielded calls on weekends; his work performance was always very good – in fact, he received a bonus check for his excellent work performance even though he had been working for less than one year – and he was not written up for poor work performance; he instructed seven employees "to stop billing for work that was not done"; and he was summarily terminated

10

without explanation. (P's Opp. at 6.) But none of these allegations are asserted in Plaintiff's AC, and Plaintiff cannot amend a pleading through his opposition brief. *See, e.g.*, *Maxim Grp. LLC*, 690 F. Supp. 2d at 308.

Even if the Court were to consider those allegations, they would still be insufficient. "Plaintiff must allege some facts 'such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.'" *Griffin*, 2011 WL 12872504, at *3 (quoting *Bowles v. City of Camden*, 993 F. Supp. 225, 265 (D.N.J. 1998)). Plaintiff's additional allegations do not address the timing of his complaint(s) vis-à-vis his termination. To the extent his instruction that other employees should "stop billing for work that was not done" means that he told his staff not to bill clients for work performed by unlicensed staff as if it were performed by licensed brokers (which is not clear from his brief), he has not stated whether his employers were aware that he gave that instruction and, if so, what the reaction was. Additional facts concerning causation are particularly warranted here, where the AC includes allegations that suggest Plaintiff could have been terminated for non-retaliatory reasons, such as Sica's alleged dissatisfaction with Plaintiff's work performance or suspicion that Plaintiff was having an inappropriate relationship with another co-worker. (*See* AC ¶¶ 17-20, 23, 25, 28.)[9]

Accordingly, because Plaintiff has failed to plausibly plead the existence of a causal connection between his whistle-blowing activity and his termination, Defendants' motion to dismiss Plaintiff's CEPA claim is granted.

---

[9] Plaintiff also argues that a causal connection can be inferred by showing that the employer's "stated reason for its actions is not the true reason." (P's Opp. at 5.) While this may be true, it is of no help here, where Plaintiff does not allege in the AC that Defendants gave any reason for his termination and concedes in his brief that they fired him "without explanation." (*Id.* at 6.)

Defendant Insperity also moves to dismiss Plaintiff's CEPA claim on the ground (among others) that Plaintiff has not asserted any allegations that would make Insperity liable to Plaintiff under CEPA. (Insperity Mem. at 14.) Insperity correctly argues that the AC contains no allegations concerning Insperity's involvement in the complained-of billing practices, Insperity's awareness of such practices, whether Plaintiff complained of such practices to Insperity, whether Insperity was involved in Plaintiff's termination, or whether Insperity took other adverse employment action against him. (*Id.*) Because liability under CEPA requires that the plaintiff establish "that the defendant took an adverse employment action against him because of his whistle blowing," *Southward v. Elizabeth Bd. of Educ.*, No. 15-CV-3699, 2017 WL 111924, at *10 (D.N.J. Jan. 11, 2017) (internal quotation marks omitted), Plaintiff's failure to plead any involvement on the part of Insperity provides an independent basis for dismissal. Plaintiff also failed to address the arguments Insperity made in its moving brief concerning its lack of involvement. Such failure constitutes abandonment of his cause of action against Insperity and is another ground for dismissing Plaintiff's CEPA claim against Insperity. *See, e.g.*, *Silverman v. Miranda*, 116 F. Supp. 3d 289, 303 (S.D.N.Y. 2015); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014).

### III. LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, (Doc. 23), after having the benefit of pre-motion letters from Defendants outlining their proposed grounds for dismissal, (Docs. 6, 17), and the Court's observations during the January 16, 2018 conference. In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend *sua sponte*. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to

amend *sua sponte*."). Plaintiff was on notice of the deficiencies in his complaint concerning his failure to allege that Insperity was in any way involved in the events from which Plaintiff's CEPA claim arises, (*see* Doc. 17 at 2), and he has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion as to Insperity. Accordingly, the Court declines to grant leave to amend *sua sponte* as to Insperity. *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

Plaintiff was also on notice that Defendants intended to raise, in connection with the CEPA claim, his failure to specify what law or regulation he challenged. (*See* Doc. 17 at 3; Doc. 6 at 2-3.) His failure to add facts to clarify the basis of his claim is hard to fathom. Nevertheless, because it appears the defects in the AC in this regard "are potentially curable," *Zucker v. Five Towns Coll.*, No. 09-CV-4884, 2010 WL 3310698, at *3 (E.D.N.Y. Aug. 18, 2010), and because (as discussed below) I am allowing amendment on another point, I exercise my discretion to allow Plaintiff to amend to better explain his theory. Plaintiff must provide

specifics regarding what the ALS Defendants did and why he reasonably believed it to violate a law or regulation or amount to a crime or fraud.

Plaintiff was not on notice of the deficiencies in his complaint concerning his failure to plead the causal connection element of the CEPA claim, as the Defendants did not raise this issue in their pre-motion letters. (*See* Doc. 17 at 2; Doc. 6 at 2-3.) Because that defect can also potentially be cured, Plaintiff may amend on the point. He should provide specifics regarding the timing of his complaints or objections to his employer and of his termination, and/or any other facts that would suggest that his whistle-blowing rather than other issues prompted the termination.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are GRANTED. The claims for intentional infliction of emotional distress, tortious interference, and breach of the covenant of good faith and fair dealing are dismissed with prejudice. Insperity is dismissed as a Defendant with prejudice. The claim under CEPA as to the ALS Defendants is dismissed with leave to amend. Any Third Amended Complaint ("TAC") must be filed no later than October 25, 2018. If Plaintiff fails to file a TAC, the Clerk of Court shall close the case without further order of the Court.[10] The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 30, 36), and to terminate Insperity from the case.

**SO ORDERED.**

Dated: October 4, 2018
      White Plains, New York

*Cathy Seibel*
UNITED STATES DISTRICT JUDGE

---

[10] If Plaintiff files a TAC, the parties shall show cause by November 8, 2018 why the case should not be transferred to the District of New Jersey (per footnote 2).

15